*Harlan & Craddock* for plaintiff; *Bradley* for defendants.

---

## Graham's Ex'r., &c. *vs* Sam and others, (persons of color.)

CHANCERY.

APPEAL FROM THE TODD CIRCUIT.

*Case* 107.

### *Wills. Emancipation. Slaves. Dower.*

JUDGE BRECK delivered the opinion of the Court.

*July* 16.

Case stated.

THIS bill in chancery was exhibited by Sam and fourteen others, persons of color, some of whom were infants, and sued by Sam as their next friend, against the executor, devisees and heirs, and widow of John Graham, deceased, claiming the benefit of the provision

made for them by said Graham, their former master, in his last will.

The will contains the following clause, viz: "Lastly, I will that my negroes should go to Liberia, and for that purpose I now give them dispensation of ten years, viz: until the 1st January, 1850, during which time they will be hired out annually, by my executor, but not to the highest bidder; the proceeds of said hire kept as a separate fund. Now should any or all of those slaves become willing and give themselves up to embark for Liberia, I do hereby emancipate all such for that purpose. That each grown emigrant be furnished with a decent suit of clothing and one hundred dollars cash, as an outfit, to be furnished out of the proceeds of the hires above kept as a separate fund for the purpose, if need should so require, if otherwise, at the expiration of the ten years as above, on the 1st day of January, 1850, it is my will that they be equally divided amongst all my grand children by valuation, then living."

The complainants alledge that they elect to go to Liberia, and give themselves up for that purpose, and pray that the Chancellor will cause the provisions in the will for their benefit to be enforced and carried out according to the benevolent intention of the testator.

The defendants resisted upon various grounds, the relief sought.

The Court below decreed that the complainants should be permitted to depart immediately, or as soon as might be practicable, for Liberia, and that neither the executor or others should interpose any obstacle to prevent their emigration to that country; that the executor should pay to each of the grown complainants, one hundred dollars, and furnish them with clothing as directed by the will. The Court further decreed that the complainants were entitled to their hire subsequent to the exhibition of their bill, and their election therein to embark for Liberia, and directed the same to be paid over to them; and that out of this fund the young as well as the old, should be properly and amply furnished with clothing for their removal.

From that decree the defendants have appealed to this Court.

Various questions are presented by the assignment of errors—and,

1st. As to the jurisdiction. That a Court of equity has jurisdiction and ample power, upon the refusal or failure of the executor, as in this case, to execute the will, according to its proper construction, it seems to us there can be no doubt.

It is one of those cases in which it is the peculiar province of the Chancellor to interpose, and who alone could grant the relief to which the complainants were entitled.

The complainants, upon application to Court, were permitted, and very properly, to sue in *forma pauperis.* The objection to the jurisdiction and form of proceeding is deemed wholly untenable.

2d. It is insisted that the Court erred in the construction of the will. The Court decided, and we think correctly, that it was not the intention of the testator that the complainants should wait till the expiration of ten years before they could exercise the privilege of electing and surrendering themselves up to embark for Liberia. It is manifest, in our opinion, that he intended to give them the privilege to elect, at any time during the ten years, and that the privilege should continue until the expiration of that period, and then cease. In the first part of the clause, he expresses his desire that his negroes should go to Liberia; and afterwards provides that should any or all of them become willing and give themselves up to embark, that he thereby· *emancipates* all such for that purpose. Upon their making the election and actually embarking, their emancipation should be regarded as having relation back to the death of the testator.

This construction, which we think is very clearly authorized, obviates the objection that some of the complainants have been born since the death of the testator. If the freedom of the mother, upon her election and embarkation, relates back to the death of the testator, it would follow, of course, that the child would be free, and ought, not only in view of the clearly presumed intention of the testator, but in obedience to the dictates

GRAHAM'S EX'R..
*vs*
SAM *et al.*

Errors assigned; want of jurisdiction.

The Chancellor has jurisdiction to decree a specific performance of a will directing slaves to be sent to Liberia on their electing to go.

The testator provided that if any of his slaves. should become. willing, and give. themselves up to. embark for Liberia, that *"he. thereby emancipates all such."* Held that upon, any one of the. slaves electing to go, and embarking for Liberia, that the emancipation of such slave had relation back to. the death of the. testator and that. issue born after the testator's; death, of such. slave would also, be free.

GRAHAM'S EX'R.
*vs*
SAM *et al.*

of humanity, to be considered as embraced by the provision and to follow the destiny of the mother.

It is evident the testator intended that infants as well as adults, should enjoy the benefit of the provision. It was his will that all should go to Liberia, and we think the Court below was right, if the children were too young to exercise the privilege of election, in permitting the parents to do it for them, and more especially as the election was such as the Chancellor would approve.

The husband has the right to emancipate his slaves irrespective of the widow's right of dower, and the renunciation by the widow of the provisions of the will of her husband, cannot impair the right of slaves emancipated to their freedom. (1 *Dana*, 48.)

3d. It is contended that the right of dower of the widow of the testator in his slaves, was not affected by the will, as she renounced its provisions, and several of the complainants were allotted to her as dower, by order of the County Court. The Court below very properly, we think, disregarded that allottment, and the claim set up by the widow.

The right of emancipating by will, is given by statute, untrammelled by any reservation or restriction as to the widow's right of dower. In *Lee* vs *Lee's executors, &c.*, (1 *Dana*, 48,) this Court so decide, and that the widow is not entitled to dower in the slaves of her husband, emancipated by his last will and testament.

But it is urged the emancipation in this case is conditional, and consequently that the question settled in the case referred to, is not applicable and certainly not conclusive.

It is true the emancipation in this case is made to turn upon the contingency of the complainants' being willing to embark for Liberia. In that event the testator says: *I hereby emancipate them for that purpose.* There is nothing prohibitory in the statute, and no valid objection upon any ground, is perceived against this conditional emancipation. We think it is valid under the statute, and consequently that the widow can interpose no right of dower as an obstacle to the execution of the will in that respect.

Slaves by the will were to be free upon surrendering themselves up to embark for Liberia,

4th. It is objected that the Court erred in decreeing a hundred dollars to be paid over to each of the grown complainants, and that the hire of the complainants subsequent to the exhibition of their bill, should also be paid over to them. This objection is deemed valid. It was

not, we think, the intention of the testator that his slaves should be emancipated, unless they actually embarked for Liberia. It is true he says: Should they become willing, and give themselves up to embark, I hereby emancipate all such for that purpose. But he evidently intended when they made their election, that suitable steps were to be taken for sending them to the place of destination. We cannot presume that it was his intention to leave the consummation of his purpose in the discretion, and indeed at the option of the complainants. The Court, therefore, if the executor under the circumstances was not deemed a suitable person, should have appointed some other person as an agent or commissioner, to make suitable arrangements for the complainants for sending them to Liberia, The funds which the complainants were entitled to, should have been directed to be paid over to such agent, with directions, after furnishing the necessary supplies for their emigration, to pay it over to them upon their embarkation. Bond and surety from such commissioner, for the faithful performance of the duties which the Court from time to time might enjoin upon him, should be required. The Court should retain the control of the whole case till the devise in regard to the complainants was fully enforced.

Should a proper opportunity for conveying the complainants to Liberia not immediately occur, the Court should retain control over them, and have them hired out, and proper care taken of them till such opportunity should be presented. The complainants would of course be entited to their hire.

The decree, we think, in regard to the funds and provision to which the complainants are entitled, is right. We are not satisfied that they were entitled to any more of their hire prior to the exhibition of their bill, than was decreed to them. We are, however, of opinion that the personal services and expenses of the commissioner who may be appointed, should be paid out of that fund, and also the necessary expenses in taking the complainants to the port of embarkation for Liberia. That these expenses should be defrayed out of the remaining portion of that fund, after paying the several sums as directed in

GRAHAM'S EX'R.
*vs*
SAM *et al.*

and to receive $100 each. The Court should appoint a comm'r. to superintend the preparation to embark after election, and to pay over the money upon embarking, if the executor be not a suitable person to do so.

the decree. It seems to us that the expenses thus direct-ed to be paid, are necessarily incident to the due execution of the will. The question presented by the cross error in regard to the hire of the complainants, prior to the exhibition of their bill, has already been disposed of.

The decree is right so far as it regulates the payment of costs.

The decree, for the errors indicated, is reversed, and the cause remanded for further decree and proceedings consistent with this opinion.

*Hise* for appellants; *Underwood and Bristow* for appellees.